UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PATRICIA CAROLYN TOWERS,

      Plaintiff,

  v.

CAROLYN W. COLVIN,
Commissioner of the Social Security
Administration,

      Defendant.

Civil Action No. 11-01935
DAR

**MEMORANDUM OPINION**

    Plaintiff Patricia Carolyn Towers commenced this action against the Commissioner of the Social Security Administration, pursuant to 42 U.S.C. § 405(g), seeking review of the Social Security Administration's denial of her claim for social security benefits and supplemental security income benefits. *See* Complaint (Document No. 1). The matter was initially assigned to the undersigned for full case management and dispositive motions. *See* Order Referring Case to Magistrate Judge (Document No. 15). However, the parties consented to proceed before a United States Magistrate Judge for all purposes, and the matter was assigned to the undersigned. *See* Consent to Proceed Before A United States Magistrate Judge for All Purposes (Document No. 17). Pending for determination are Plaintiff's Motion for Judgment of Reversal (Document No. 10) and Defendant's Motion for Judgment of Affirmance (Document No. 11). Upon consideration of the motions, the memoranda in support thereof and opposition thereto, the administrative record, and the entire record herein, the undersigned will deny Plaintiff's motion, and grant Defendant's motion.

**BACKGROUND**

Plaintiff Patricia Carolyn Towers, who was born in 1961, applied for disability insurance benefits and supplemental security income benefits on August 1, 2007. Administrative Record ("AR") (Document No. 7-5) at 4-6, 12-18. At that time, she reported that she became disabled on February 21, 2007 due to gout, arthritis, hepatitis C, diabetes, high blood pressure, emphysema, and lower back pain. AR (Document No. 7-7) at 22. Her past work included employment as an office cleaner, housekeeper, fork lift operator, and cashier. *Id*. at 23. Plaintiff's claims were initially denied by the agency, and also upon reconsideration. Memorandum of Points and Authorities in Support of Plaintiff's Motion for Judgment of Reversal ("Plaintiff's Memorandum") at 1-2.

Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). *Id*. at 2. The ALJ conducted a hearing on October 27, 2009 at which he heard testimony from Plaintiff, who was represented by counsel, and James Ryan, a vocational expert. AR (Document No. 7-2) at 21. The ALJ also considered the medical records and treatment notes offered by Plaintiff; treatment notes from Dr. Edgar Potter; Dr. John Cohen, orthopedic surgeon; Dr. Joel Taubin, agency consultative physician; Dr. Jacqueline McMorris, agency medical consultant; and Dr. Eric Marshall. The ALJ issued his findings on December 9, 2009, including his determination that Plaintiff was not entitled to disability insurance benefits and supplemental security income benefits because "[Plaintiff] has not been under a disability within the meaning of the Social Security Act from February 21, 2007 through the date of [his] decision." *Id*. at 28. The ALJ set forth his findings with respect to each step of the five-step sequential evaluation process for determining whether an individual is disabled 20 C.F.R. §§ 404.1520(a) and

416.920(a).  *Id*. at 23-27.  The ALJ found that Plaintiff "has not engaged in substantial gainful activity since February 21, 2007, the alleged onset date."  *Id*.  at 23 (citing 20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq*.  The ALJ determined that Plaintiff suffers from gout, obesity, degenerative joint disease of left ankle, degenerative disc disease, hepatitis C, and diabetes but further determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. [§§] 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  AR (Document No. 7-2) at 23.  The ALJ found that Plaintiff "has the residual functional capacity to perform less than a full range of sedentary work" and that she "requires the option to alternate between sitting and standing."  *Id*. at 24.  In so finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [,] [including] opinion evidence[.]"  *Id*.

The ALJ further found that Plaintiff "is unable to perform any past relevant work" as an "office cleaner (medium/semi-skilled), housekeeper (light/skilled), fork lift operator (medium/semi-skilled), and cashier (light/semi-skilled)."  *Id*. at 27.  However, the ALJ concluded that "[b]ased on the testimony of the vocational expert . . . considering the [Plaintiff's] age, education, work experience, and residual functional capacity, the [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  *Id*. at 28.  Accordingly, he concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from February 21, 2007 through the date of this decision."  *Id*.

Thereafter, Plaintiff requested review of the ALJ's decision by the Social Security Administration Office of Disability Adjudication and Review's Appeals Council ("Appeals Council"), AR (Document No. 7-2) at 16, and submitted medical records and reports as additional evidence to be considered by the Appeals Council. The Appeals Council received the additional evidence, but, on September 9, 2011, denied Plaintiff's request for review. AR (Document No. 7-2) at 2. The Appeals Council determined that "[the reasons Plaintiff disagreed with the ALJ's decision] [do] not provide a basis for changing the [ALJ's] decision[,]" and "found no reason under [the Appeals Council's] rules to review the Administrative Law Judge's decision." *Id*. at 2-3. The ALJ's decision thus became the final decision of the Commissioner, and Plaintiff then timely commenced this action for review of the decision.

**CONTENTIONS OF THE PARTIES**

Plaintiff contends that the ALJ's decision should be reversed, and that she should be awarded social security insurance benefits and supplemental security income. Alternatively, Plaintiff submits that the matter should be remanded for a new hearing. Plaintiff's Memorandum at 1. Plaintiff challenges the ALJ's determination on the following basis: (1) the ALJ failed to follow the treating physician rule; (2) the Appeals Council failed to properly consider new evidence; (3) the ALJ failed to properly evaluate the Plaintiff's credibility; and (4) the ALJ relied upon flawed vocational expert testimony. *Id.* at 12-22. Plaintiff asserts that the ALJ erred in determining that "despite the severe impairments of gout, obesity, degenerative joint disease of the left ankle, degenerative disc disease, hepatitis C, and diabetes, [Plaintiff] retained the residual functional capacity ("RFC") to perform sedentary work except that she requires the option to alternate between sitting and standing and she can perform only unskilled work involving limited

use of the dominant hand and limited contact with the general public." *Id*. at 12. Plaintiff further asserts that the ALJ erred in determining that Plaintiff "could perform other work as a census clerk, charge account clerk, and unarmed security worker" after he "conceded [Plaintiff] was unable to perform any of her past work[.]" Plaintiff's Memorandum at 12.

Defendant, in support of her motion and in opposition to Plaintiff's motion, maintains that the agency's decision is supported by substantial evidence in the record. Memorandum of Law in Support of Defendant's Motion for Judgment of Affirmance and in Opposition to Plaintiff's Motion for Judgment of Reversal ("Defendant's Memorandum and Opposition") (Document Nos. 11, 12) at 1. Defendant contends that the "(1) ALJ correctly analyzed all medical opinion evidence in the record, giving more weight to opinions supported by the records and explaining all of his findings; (2) the Appeals Council correctly found that evidence submitted after the date of the ALJ's decision presented no reason to revisit the ALJ's findings; (3) the ALJ appropriately analyzed [Plaintiff's] credibility in accordance with the appropriate authorities; and included in his findings a detailed discussion of record evidence; and (4) the ALJ incorporated into his decision vocational expert testimony based on limitations supported by record evidence." *Id*. at 1. In support of these contentions, Defendant argues that the "(1) ALJ properly analyzed all opinion evidence in the record" in that Plaintiff 's "treating physician offered an opinion inconsistent both with his own treatment notes and with other evidence in the record"; (2) the "ALJ correctly analyzed Dr. Taubin's and Dr. McMorris' opinions, both of which accord with and are supported by other evidence in the record"; (3) the "Appeals Council correctly refused to review the ALJ's decision in light of later evidence that was not reasonably likely to change the ALJ's conclusions"; (4) the "ALJ properly evaluated [Plaintiff's] credibility

and provided a detailed supporting discussion of the evidence in the record"; and (5) the "ALJ relied upon vocational expert testimony regarding all limitations supported by the record and only those limitations supported by the record." Defendant's Memorandum and Opposition at 11-27.

Plaintiff, in her opposition to Defendant's motion and reply to Defendant's opposition, "adopts and incorporates herein her arguments raised in her Motion for Judgment of Reversal." Plaintiff's Opposition to Defendant's Motion for Judgment of Affirmance, and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion for Judgment of Reversal ("Plaintiff's Opposition and Reply") (Document Nos. 13, 14) at 1.

**STATUTORY FRAMEWORK**

The Social Security Act established a framework to provide "disability insurance benefits" to eligible individuals and "to provide supplemental security income to individuals who have attained age 65 or are blind or disabled." 42 U.S.C. §§ 423, 1381, 1381a. The statute defines disability for non-blind individuals as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" § 423(d)(1)(A); 20 C.F.R. § 416.905. A disabled individual is eligible for supplemental security income if he or she meets additional statutory requirements concerning "income" and "resources." 42 U.S.C. § 1382(a). The Social Security Administration has promulgated regulations, pursuant to the statue, outlining a five-step process for evaluating disability of adults. *See* 20 C.F.R. §§ 404.1520, 416.920.

First, the agency evaluates whether the claimant is "doing substantial gainful activity"; if

so, the agency concludes that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), (b); 416.920(a)(4)(I), (b). If not, the agency determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . . ." §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." §§ 404.1520(c); 416.920(c). If deemed severe, the agency then determines whether the impairment "meets or equals one of [the] listings"; if so, and it meets the duration requirement, the agency concludes that the claimant is disabled. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d). The "listings" refers to a "listing of impairments" which "describes for each of the major body systems impairments that [the agency] consider to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." § 404.1525(a).

Next, the agency assesses the claimant's "residual functional capacity and . . . past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f). Residual functional capacity is "the most [an individual] can still do despite" "physical and mental limitations," from all medically determinable impairments, "that affect what [he or she] can do in a work setting." § 404.1545. If the claimant has the residual functional capacity to perform his or her "past relevant work," the claimant is deemed not disabled. § 404.1560(b)(3). Otherwise, the agency assesses the claimant's "residual functional capacity and . . . age, education, and work experience to see if [he or she] can make an adjustment to other work." §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g). If the claimant can adjust to other work that "exist[s] in significant

numbers in the national economy," the agency determines that the individual is not disabled. § 404.1560(c). However, if the claimant cannot make such an adjustment, the agency finds that the individual is disabled. §§ 404.1520(g)(1), 416.920(g)(1).

**APPLICABLE STANDARD**

Claimants may seek judicial review in a United States district court of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . ." 42 U.S.C. § 405(g). "The Commissioner's ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations omitted). "In other words '[a] district court's review of the [Social Security Administration's] findings of fact is limited to whether those findings are supported by substantial evidence.'" *Little v. Colvin*, 997 F. Supp. 2d 45, 49 (D.D.C. 2013) (citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (internal quotation marks omitted) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The test requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Id.* (citation omitted) (internal quotation marks omitted).

The United States Court of Appeals for the District of Columbia Circuit has observed that "[s]ubstantial-evidence review is highly deferential to the agency fact-finder," *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008), and that "a reviewing judge must uphold the ALJ's legal 'determination if it . . . is not tainted by an error of law,'" *Isaraphanich v. Comm'r of Soc. Sec. Admin.*, No. 12-0700, 2013 WL 3168141, at *3 (D.D.C. June 21, 2013) (citations omitted); *see also Nicholson v. Soc. Sec. Admin.*, 895 F. Supp. 2d 101, 103 (D.D.C.

2012) (citation omitted) (internal quotation marks and alteration omitted) (noting that the inquiry upon judicial review "examines whether the ALJ has analyzed all evidence and has sufficiently explained the weight he had given to obviously probative exhibits"); *Little*, 997 F. Supp. 2d at 49 (citations omitted) (noting that the court "is not to review the case 'de novo' or reweigh the evidence"). "The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Muldrow v. Astrue*, No. 11-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012) (citation omitted); *see also Garnes v. Colvin*, No. 12-1090, 2013 WL 5297221, at *4 (D.D.C. Aug. 27, 2013).

**DISCUSSION**

For the reasons that follow, the undersigned finds that the ALJ's findings are supported by substantial evidence, and were made in accordance with applicable law.

  **I.**  ***The ALJ Appropriately Analyzed and Evaluated the Medical Opinion Evidence in the Record and Afforded Proper Weight As Supported by the Record Evidence***

Plaintiff has the burden to establish that she was disabled from February 21, 2007 through December 9, 2009 in order to be entitled to a period of disability insurance benefits. The ALJ determined that "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." AR (Document No. 7-2) at 25. Plaintiff contends that the "ALJ gave 'little weight' to the opinions from treating physician Dr. Marshall" and that the ALJ "found the opinions 'inconsistent with the record[.]'" Plaintiff's

Memorandum at 13. Plaintiff further contends that the ALJ's decision was "based on [Plaintiff's] subjective complaints rather than any clinical or objective findings[ ]"; that the ALJ "gave significant weight to the opinion from consultative examiner, Dr. Taubin, that [Plaintiff] could perform a desk job"[,] and that the ALJ gave "some weight to the opinion from a non-examining medical consultant." Plaintiff's Memorandum at 13 (internal quotation marks omitted).

The District of Columbia Circuit has established its "treating physician rule." In *Espinosa v. Colvin*, 953 F. Supp. 2d 25 (D.D.C. 2013), the district court held that "a treating physician's report is binding on the fact-finder unless contradicted by substantial evidence." 953 F. Supp. 2d at 32 (citing *Butler*, 353 F. 3d 992, 1003 (D.C. Cir. 2004)); *see also* 20 C.F.R. § 404.1527 (c)(2) (stating that when "a treating [physician]'s opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [plaintiff's] case record, [SSA] will give it controlling weight") (citations omitted). "If an ALJ rejects a treating physician's opinion, the ALJ bears the burden of explaining why he has rejected the treating physician's opinion and how the doctor's assessment is contradicted by substantial evidence." *Espinosa*, 953 F. Supp. 2d at 32 (citations omitted).

Dr. Edgar Potter, Plaintiff's treating physician, examined Plaintiff in April and June 2007. AR (Document No. 7-8) at 25-33. During Plaintiff's June 2007 office visit, Dr. Potter's objective findings and plan of treatment contradicted her testimony at the hearing in which she described her impairments as totally disabling. *Id*. at 25; 10/27/2009 Tr. (Document No. 7-2) at 34-42. Dr. Potter diagnosed Plaintiff with gouty arthritis and referred her to an orthopedist to evaluate her left ankle to "rule out ankle sprain versus ligament tear." AR (Document No. 7-8) at

25. He also "[r]einforced the need for avoidance of gouty triggers" and "[r]einforced the need for weight loss efforts." *Id*.

Dr. John Cohen, orthopedic surgeon, examined Plaintiff in July 2007 and noted that she was "in no acute distress[,]" and that an x-ray showed that she did not fracture her left ankle but showed "some early arthritis of the ankle joint." AR (Document No. 7-8) at 34. Dr. Cohen's treatment plan included use of a cane; weight loss, "which would really affect her health[,]" and that in his opinion, "she should go back to work." *Id*. at 35.

Dr. Joel Taubin conducted a consultative examination in October 2007. Dr. Taubin's treatment notes appear consistent with the record, and contradict Plaintiff's assertion that her impairments render her completely disabled. Specifically, Dr. Taubin's impression was that Plainitff had shortness of breath secondary to morbid obesity; no obstructive airway disease; history of drug abuse and alcohol abuse; hepatitis C; uncontrolled diabetes, moderate hypertension; knee pain, and history of osteoarthritis. Dr. Taubin concluded that while Plaintiff's "labor [was] limited by her morbid obesity and knee pain[,]" she could sit at a desk. *Id*. at 42-43.

Dr. Jacqueline McMorris, agency medical consultant, completed the Physical Residual Functional Capacity Assessment in October 2007. Based upon her examination of Plaintiff, she concluded that Plaintiff experiences exertional limitations but not to the degree and extent to which Plaintiff testified. AR (Document No. 7-9) at 3. Dr. McMorris also concluded Plaintiff could sit for 6 hours out of an 8 hour day; could stand or walk at least 2 hours out of an 8 hour day; and could sit at a desk. *Id*. Dr. McMorris also concluded that Plaintiff's shortness of breath on exertion was attributable to her obesity. *Id*. Finally, with respect to Plaintiff's assertion regarding the severity of her impairments, Dr. Morris concluded that Plaintiff is "partially

credible" because "obesity is a significant factor[,]" although Plaintiff "has the capacity for sedentary work." *Id*. at 7.

A comparison of the notes of Dr. Eric Marshall, treating physician, and the other treatment notes in the record, reflect inconsistencies regarding the severity and extent of Plaintiff's impairments. For example, in May 2008, Dr. Marshall noted that Plaintiff experiences extreme restrictions of activities of daily living; extreme repeated episodes of decompensation in work or work like settings for an extended duration; is unable to sit, stand, or walk for less than two hours; can lift or carry less than 10 pounds, and that her medical condition prevents her from working. AR (Document No. 7-9) at 34.

In his January 2009 treatment notes, Dr. Marshall noted pain and numbness in Plaintiff's legs and feet; muscle weakness in her legs; swelling from her thigh down; difficulty walking, and other symptoms related to his diagnosis of Type II diabetes. *Id*. at 43-44. With respect to Plaintiff's residual functional capacity, Dr. Marshall's opinion varied from his assessment in 2008: he opined that Plaintiff could only sit for zero to one hour; stand or walk for zero to one hour; can never lift or carry five to ten pounds, and is likely to be absent from work as a result of her impairments or treatment from three to four days or at least five times in a month. *Id*. at 46-48. He also diagnosed her with osteoarthritis and diabetic neuropathy, and noted she required the use of cane. AR (Document No. 7-10) at 8. Dr. Marshall referred her for an MRI of the thoracic and lumbar spine due to his diagnosis of radiculopathy. *Id*. at 12.

In October 2009, Dr. Marshall diagnosed Plaintiff with diabetic peripheral neuropathy, hypertension, chronic obstructive pulmonary disease, carpal tunnel syndrome, and chronic low back pain. AR (Document No. 7-11) at 33. He concluded that Plaintiff can never lift or carry

...

any weight and is essentially precluded from grasping, turning, and twisting objects. *Id*. at 36. He also opined that Plaintiff would need to rest three to four days before returning to work. *Id.* at 38.

The Hearing Officer rejected both the opinion of Dr. Marshall and Plaintiff's testimony due to inconsistencies between their testimony and the other evidence. Specifically, the Hearing Officer noted that "[Plaintiff's reported activities of daily living after her alleged onset date, including taking care of many personal needs, attending church on a regular basis, preparing light meals, doing laundry, ironing, and shopping, . . . are inconsistent with her allegation of total disability." AR (Document No. 7-2) at 25. He also noted that the "medical evidence of record does not substantiate the [Plaintiff's] allegations of disabling limitations." *Id*. The ALJ supported his reasons for rejecting Dr. Marshall's and Plaintiff's testimony as required by the treating physician rule. *Jones v. Astrue*, 647 F. 3d 350, 356 (D.C. Cir. 2011); *Williams v. Shalala*, 997 F. 2d 1494, 1498 (D.C. Cir. 1993); *see also Shaw v. Chater*, 221 F. 3d 126, 134 (2d Cir. 2000).

The undersigned finds that Plaintiff has failed to demonstrate that the ALJ's decision was not based on substantial evidence or incorrectly applied the relevant law. *Nicholson v. Astrue*, No. 10-2010, 2012 WL 4511271, at *7 (D.D.C. Mar. 14, 2012) (Plaintiff has the "burden of demonstrating that the Commissioner's decision is not based on substantial evidence or that incorrect legal standards were applied.").

> **II.** ***A Remand to the Agency is Not Warranted Because the Appeals Council Did Not Err in Refusing to Review the ALJ's Decision in Light of the Newly Submitted Evidence***

Plaintiff asserts that the Appeals Council failed to properly consider the new evidence and

that the "ALJ's decision is unsupported by substantial evidence." Plaintiff's Memorandum at 17. Plaintiff relies on a Fourth Circuit opinion in support of her contention that Dr. Chitra Chari's report is new evidence that should have been considered by the Appeals Council "because the treating neurologist had not previously completed a report that was before the ALJ." *Id.* at 17-18. Plaintiff argues that Dr. Chari's report "relates to the period at issue because [she] began treating [Plaintiff] in February 2009" and that her "symptoms and limitations found in her report were present since 2007." *Id*. at 18.

While a court may remand a matter for the agency to consider this additional evidence, it may do so "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. § 405(g). "In order to satisfy the materiality requirement, the claimant must show that the evidence 'might have changed the outcome of the prior proceeding.'" *Jones*, 647 F.3d at 358 (citing *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991); *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)); *Isaraphanich*, 2013 WL 3168141, at *6.

After a review of Dr. Chari's report, the undersigned finds that the ALJ did not err in the determination that the report would not have changed the outcome of the proceedings before him. Dr. Chari's report contradicts the testimony of Plaintiff and Dr. Marshall with respect to Plaintiff's allegations that her symptoms render her completely disabled. Specifically, Dr. Chari noted in her report that Plaintiff had numbness and tingling in her feet but refused to elaborate further or offer any opinion regarding any objective findings with respect to Plaintiff's pain or fatigue or her ability to lift, carry, stand or walk. AR (Document No. 7-12) at 26-29.

The ALJ noted that Dr. Marshall, in his January 2009 report, opined that Plaintiff "could

sit and walk for less than one hour in an 8 hour workday; could not sit or stand continuously in a work setting; must get up and move around every 15 minutes; could occasionally lift/carry up to 5 pounds; could not perform even low-stress work; required excused absences more than three times a month . . ." AR (Document No. 7-2) at 26. The ALJ also noted that "Dr. Marshall offered a nearly identical assessment in October 2009[]" and as a result, he "afforded little weight to the opinion of Dr. Marshall because it is inconsistent with the record and is not supported by the evidence." *Id.*

The ALJ concluded that the Plaintiff's "activities of daily living, the medical and other evidence of record, and the findings of the State agency consultants suggest that the [Plaintiff] can sustain a greater capacity than she described at the hearing[,] . . . [and that the Plaintiff's] subjective complaints and alleged limitations are not fully persuasive." AR (Document No. 7-2) at 26.

Plaintiff has identified no error with the findings of the ALJ, as the ALJ's determination is supported by "substantial evidence in the record and correctly applied the relevant legal standards." *Butler*, 353 F. 3d at 999.

### III.   *The ALJ's Findings That Plaintiff Was Not Credible and His Reliance Upon the Vocational Expert Testimony Were Made in Accordance with Applicable Law*

The ALJ determined that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." AR (Document No. 7-2) at 25. The undersigned finds that the ALJ's determination is supported by

substantial evidence in the record that Plaintiff's testimony at the hearing is contrary to the record evidence as discussed in detail in Section I.

James Ryan, the vocational expert, identified, in response to a hypothetical question, at least six positions in which Plaintiff could work. AR (Document No. 7-2) at 43-45. The ALJ determined that "[b]ased on the testimony of the vocational expert, . . . considering the [Plaintiff's] age, education, work experience, and residual functional capacity, the [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and that a "finding of 'not disabled' is therefore appropriate." *Id*. at 28. In coming to this conclusion, the ALJ, pursuant to SSR 00-4p, credited the vocation expert testimony with being consistent "with the information contained in the Dictionary of Occupational Titles, with the exception that the information regarding the sit/stand option, which is not specifically addressed by that publication, was based on his own experience and knowledge as a vocational consultant." *Id*.

Pursuant to 20 C.F.R. § 404.1566(e), 416.966(e), the "[Social Security Administration] regulations provide that when determining if there are jobs that exist in significant numbers in the national economy that a claimant could perform base on her residual functional capacity, the ALJ may consider the testimony of a vocational expert." *Cunningham v. Colvin*, No. 13-00585, 2014 WL 2426750, at *8 (D.D.C. May 30, 2014); *see also Brown v. Barnhart*, 408 F. Supp. 2d 28, 33 (D.D.C. 2006) ("An administrative law judge may base his decision on the testimony of a vocational expert."). The court held that "[w]hen the ALJ looks to a vocational expert in assessing a claimant's ability to do other work, the ALJ must accurately describe the claimant's physical impairments in any question posed to the expert." *Cunningham*, 2014 WL 2426750, at

*8 (citing *Butler*, 353 F. 3d at 1005) (internal citations omitted).  The undersigned finds that the ALJ posed a proper hypothetical question to the vocational expert because he accurately described Plaintiff's physical impairments and limitations based upon the evidence in the record. The suggestion by the Plaintiff that the ALJ erred in relying upon flawed testimony from the vocational expert that Plaintiff "was unable to perform any past work, but that she could perform other work as a census clerk, charge account clerk, and unarmed security worker."  Plaintiff's Memorandum at 22.  Plaintiff further suggests that the "ALJ's RFC finding . . . was flawed" and that the ALJ "improperly relied upon the opinions from the one-time examiner and non-examining consultant."  *Id*. at 22-23.

The undersigned is not persuaded by Plaintiff's argument that if Plaintiff "were limited as described by the treating physician, Dr. Marshall, in her capacity to sit and stand, there would be no work she could perform" because Dr. Marshall's opinion is not consistent with the record evidence.

**CONCLUSION**

For the reason set forth herein, Plaintiff's Motion for Judgment of Reversal (Document No. 10) will be denied, and Defendant's Motion for Judgment of Affirmance (Document No. 11) will be granted by order filed contemporaneously herewith.

/s/
DEBORAH A. ROBINSON
United States Magistrate Judge

October 30, 2014